# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUIS PRESTON, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-3328** |
| **JAMES LEBLANC** | **SECTION "S"(6)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, it is hereby recommended that the instant petition be **DENIED WITH PREJUDICE**.

## PROCEDURAL HISTORY[1]

Petitioner, Louis Preston, Jr., presently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. He entered a plea of not guilty. Petitioner later filed a motion for change of venue and, after a hearing, the trial court denied the motion. Upon trial by jury in the Seventeenth Judicial District Court for the Parish of Lafourche, petitioner was found guilty as charged. Subsequently, petitioner was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

On May 9, 2003, the Louisiana First Circuit Court of Appeal affirmed petitioner's conviction and sentence. *State v. Preston*, No. 2002-KA-1958 (La. App. 1 Cir. 2003) (unpublished opinion).[2] On December 19, 2003, the Louisiana Supreme Court denied petitioner's writ application, thereby rendering his conviction and sentence final. *State v. Preston*, 861 So.2d 555 (La. 2003).

Following the conclusion of his direct appeal proceedings, counsel filed, on petitioner's behalf, an application for post-conviction relief. After conducting evidentiary hearings on June 16, 2006 and July 27, 2006, the state district court, on October 9, 2007,

---

[1]A portion of the procedural history was taken from the Louisiana First Circuit Court of Appeal's opinion, *State v. Preston*, No. 2002-KA-1958 (La. App. 1 Cir. 2003) (unpublished opinion).

[2]A copy of the state appellate court's unpublished opinion is contained in the State rec., vol. 6 of 6.

issued a "Judgment on Post Conviction Relief" denying petitioner's post-conviction application.[3]  On February 20, 2008, the Louisiana First Circuit Court of Appeal denied petitioner post-conviction relief.  *State v. Preston*, No. 2007-KW-2357 (La. App. 1 Cir. 2008) (unpublished opinion).[4]  On March 6, 2009, the Louisiana Supreme Court likewise denied petitioner's writ application.  *State v. Preston*, 3 So.3d 475 (La. 2009).

On March 18, 2009, petitioner filed the instant federal habeas corpus application, setting forth arguments which he raised in connection with his application for state post-conviction relief.  Specifically, petitioner claims that he was denied effective assistance of counsel because:  1) Counsel failed to file a motion to suppress evidence and his confession; 2) counsel failed to re-urge his motion to change venue; 3) counsel failed to withdraw due to a conflict of interest; 4) counsel failed to request or use a gunshot residue test performed on the victim; and, 5) counsel erred in his closing argument.  Petitioner also claims that he was "denied full and complete voir dire" because he did not have access to the criminal histories of the prospective jurors.  In its response, the State concedes that petitioner's habeas application is timely and does not contest the fact that petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct.

---

[3]A copy of the state district court's Judgment and copies of the evidentiary hearing transcripts are contained in the State rec., vol. 6 of 6.

[4]A copy of the state appellate court's unpublished opinion is contained in the State rec., vol. 6 of 6.

1198, 71 L. Ed. 2d 379 (1982). Accordingly, the court shall proceed to address the merits of petitioner's arguments following its review of the pertinent facts and applicable standard of review.

**FACTS**[5]

In the early morning hours of September 22, 2001, a group of mostly white party-goers, including Ryan Picou, were at a party on East 7th Street in Larose, Louisiana. Around 3:00 a.m., the party-goers decided to move the party to another house located on East 25th Street in Larose. When Picou attempted to leave East 7th Street, a vehicle with black male occupants drove down the street at a fast speed, almost hitting Picou. Picou yelled at the vehicle to "slow down," the driver stopped the vehicle, Picou and the occupants exchanged vulgarities, and Picou called the occupants "niggers." Someone in the vehicle stated that they would be back, and then the driver drove away. The petitioner was not in the vehicle and was not present at this scene.

Most of the party-goers, including Picou, went on to the East 25th Street house to continue the party. However, some of the party-goers remained at the house on East 7th Street to wait for a ride. As they were waiting, the black males that were involved in the initial altercation with Picou came back with a second vehicle following them. The black

---

[5]The facts are taken from the Louisiana First Circuit Court of Appeal's opinion, *State v. Preston*, No. 2007-KW-2357 (La. App. 1 Cir. 2008) (unpublished opinion).

4

males exited their vehicles and questioned the remaining party-goers about Picou's whereabouts. Someone informed them that Picou was now at a party located on East 25th Street. The group returned to their vehicles and left. Once again, the petitioner was not in either vehicle and was not present at the scene.

Moments later, a vehicle arrived to transport the remaining party-goers to East 25th Street. As the group was traveling on East 25th Street, they saw the same two cars that had stopped on East 7th Street to determine Picou's whereabouts. Later, some of the party-goers decided to go to a store, but they immediately returned to the party because the road was blocked by two cars. Around 5:00 a.m., when the party-goers were ready to go home, the road was still blocked. Some party-goers decided to walk down the road to talk to the occupants in the vehicles that were blocking the road. The petitioner was among the black males present at that scene, and he was witnessed passing a firearm to one of the other vehicle occupants.

At this point, the black males left their vehicles and walked to the yard at the party house where many of the party-goers were located. A verbal and then physical altercation ensued between the group of black males and the white male party-goers. Someone in the house yelled that police officers were on the way and, as a result, the group of black males, including the petitioner, left the scene and went back to their vehicles down the street.

Some of the party-goers, including Picou, remained at the house on East 25th Street and discussed the events that had taken place. The petitioner returned with what some of the witnesses thought was a stick in his hand. As the petitioner got closer to the party-goers, they noticed that it was a shotgun in his hand, not a stick. The petitioner cocked the shotgun and fired it once into the air. He stood on the steps of the house and fired the weapon again, striking Picou who was running into the house. Picou suffered fatal gunshot wounds to his back and chest. The petitioner was subsequently charged with second degree murder.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has

noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citations

omitted).

As to questions of fact, factual findings are presumed to be correct and a

federal court will give deference to the state court's decision unless it "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## ANALYSIS

### DENIED EFFECTIVE ASSISTANCE OF COUNSEL

Petitioner offers several arguments in support of his claim that he was denied

effective assistance of counsel. Petitioner offered these same arguments in support of his

state application for post-conviction relief.  In addressing these arguments, the state district

court first acknowledged the applicable law, that petitioner, "[i]n order to prevail on a claim

[of] ineffective assistance of counsel, . . . must show that counsel's actions were deficient and

that but for the counsel's deficient actions, there is a reasonable probability that the outcome

of the trial would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.

2052 [1984]."  *State v. Preston*, No. 366755, pp. 4-5 (17th JDC Oct. 9, 2007) (unpublished

opinion).[6]

Next, the state district court addressed petitioner's individual arguments,

commencing with his argument that counsel was ineffective due to his failure to file a motion

to suppress evidence, specifically, the murder weapon, and petitioner's confession.  This

argument was addressed by the state district court as follows:

> [Petitioner] asserts that attorney Boudreaux [defense counsel] should
> have filed pre-trial motions to suppress the murder weapon and his confession.
> At the evidentiary hearing, Boudreaux testified that he would have filed such
> motions if he thought he had grounds for them.  He did not think there were
> grounds so he did not file the motions.  (Ev. Hg., 6/16/06, pp. 10-11).  A
> review of the trial transcript indicates that on the fourth day of trial, May 16,
> 2002, the jury was taken out of the courtroom and a hearing was held
> regarding the collection of the weapon and the statement given by the
> [petitioner].  Detective Billy Bourg testified that [petitioner] freely and
> voluntarily executed the warning as to rights form and waiver, as well as the
> voluntary consent to search form regarding the address of 214 W. Fifth Street,
> Larose, Louisiana.  After executing both of those documents, the [petitioner]

---

[6]A copy of the above-referenced unpublished opinion is contained in the State rec., vol. 6 of
6.

gave a verbal statement regarding his actions and Detective Bourg accompanied [petitioner] back to the address where Preston indicted that the gun was located. Preston let him into the house and showed him where the gun was. [Petitioner] also identified the gun as the weapon he used to shoot the victim. Mr. Boudreaux made foundational objections during this portion of the hearing outside the presence of the jury. Mr. Boudreaux was allowed to cross-examine Detective Bourg regarding the voluntariness of both the consent to search and the waiver of the advice of rights to give a statement and the Court determined that both were freely and voluntarily executed. (Tr., Day 4, pp. 122-148).

Preston later admitted during the trial that he had given Bourg permission to enter the house and retrieve the weapon. (Tr., Day 5, pp. 100-101).

[Petitioner] Preston does not now suggest a basis for any suppression of the weapon or the confession, nor did he produce any evidence at either of the evidentiary hearings to establish that there were actual grounds to suppress the weapon or the confession. As noted by the State's memo, in *State v. Watson*, 763 So.2d 713 (4th Cir. 2000), the Court held that if no grounds to suppress evidence exists it is not [in]effective assistance of counsel if motions are not then filed.

*Id*. at pp. 5-6.

Under federal law, as under state law, an attorney's performance is not rendered ineffective due to his failure to file baseless motions. *See, e.g., United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *Sones v. Hargett*, 61 F.3d 410,

415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."). Accordingly, the court finds that the state court's determination that counsel was not ineffective by virtue of his failure to file a motion to suppress evidence and petitioner's confession does not represent an unreasonable application of federal law.

Petitioner next claims that counsel was ineffective due to his failure to reurge his motion for a change of venue. Petitioner asserts that counsel should have reurged his motion for a change of venue based upon information which was discovered during voir dire with regard to the large number of prospective jurors who had knowledge of the case. Petitioner notes that one particular venire member, Danielle Leonard, knew about petitioner's involvement in another shooting incident which occurred shortly before Picou's murder and that, by virtue of Leonard's knowledge, she tainted the entire jury pool. Petitioner also asserts that counsel should have reurged his motion based upon the significant number of letters received by the district attorney's office which contained racial slurs and that prospective jurors should have been questioned more carefully with regard to their potential racial bias.

This claim, like the last claim, was thoroughly addressed by the state district court in connection with petitioner's post-conviction application. The court noted :

> [E]ach and every panel member was questioned about their knowledge of the case and given the opportunity to make disclosures regarding such knowledge. Each veniremen was then discussed in the selection process, challenges for

cause were made, peremptory challenges were exercised and a jury was empaneled to listen to evidence. (Tr., Day 1, pp. 8-274).

As part of the post-conviction relief process, evidentiary hearings were held over two days and no evidence was produced which would show that the failure to re-urge the motion to change venue would be anymore successful during the trial, than it was prior to the trial.

*State v.* Preston, No. 366755, pp. 6-7 (17th JDC Oct. 9, 2007) (unpublished opinion).

With regard to petitioner's claim that Danielle Leonard's presence tainted the entire jury pool, the district court first set forth the applicable facts.

While waiting for the trial to begin, a prospective juror, Danielle Leonard, made comments to another venireman, Janice Rhymes, that she was aware of an alleged criminal act of the [petitioner], which occurred approximately two months prior to the incident set for trial. Rhymes was told by Leonard that the [petitioner] had possessed a weapon in the earlier altercation. During the qualification phase of jury selection, where the Court was asking for those who sought to be excused due to undue hardship, Leonard attempted to raise the issue of her knowledge of something about Preston. A conference was held out of the presence of the other veniremen and off the record and Leonard was returned to the jury pool. (Tr., Day 1, p. 17).

The first panel of prospective jurors was selected and among them was Janice Rhymes. This is when she informed the Court and counsel that she had knowledge of the case from the conversation she had that same morning with Danielle Leonard (Tr., Day 1, pp. 131-135). Leonard had told her that Preston had been charged with possessing a weapon a few months before. She stated that she would have difficulty putting aside that knowledge, but she hoped that she could be fair. Attorney Larry Boudreaux, who was representing Preston, asserted a challenge for cause which was denied by the Court. The propriety of the Court's decision is not before this Court. He then used a peremptory challenge to keep Rhymes from serving. Throughout the remaining of questioning of the first and second panel[s], no other veniremen indicated that they obtained any knowledge of Preston or of the case from Danielle Leonard or Janice Rhymes. Several panel members did indicate that they had knowledge of the case, but they were questioned specifically on their

knowledge and none of that knowledge was connected to either Leonard or Rhymes.

> In the third panel, Leonard was questioned away from the other jurors as to what she knew. She explained that she had knowledge that Preston had possessed a weapon during another altercation and could not be fair to Preston. She was excused for cause by the Court. (Tr., Day 1, pp. 223-265). Ultimately the jury was empaneled from the remaining members of the third panel. All other veniremen who were on standby to be questioned were then released, upon the swearing of the jury as a whole. (Tr., Day 1, p. 274).

*Id*. at pp. 3-4.

> Thereafter, the district court concluded:

> The review of the trial transcript does not support Preston's claim that Danielle Leonard polluted the entire jury pool. All forty-two (42) panel members examined were questioned about their knowledge of the case. Only Rhymes informed the Court that she had obtained information from Leonard. No evidence was brought forth at the evidentiary hearing to show that Leonard divulged information to any of the other forty-two (42) veniremen actually questioned or any of the remaining veniremen who were released upon empaneling of the jury. The claim asserted by Preston that there was opportunity for a tainted jury pool or that it might have occurred is insufficient.

*Id*. at p. 4.

This court finds that the above conclusion on the part of the state district court does not represent an unreasonable application of applicable federal law. Petitioner has not only failed to show that counsel was deficient in failing to reurge his motion for change of venue, but also that he was prejudiced by counsel's action, or lack thereof, in this regard.

Petitioner next argues that he was denied effective assistance of counsel by virtue of counsel's conflict of interest given the fact that he represented both petitioner and Clayton Duncan, a witness at petitioner's trial who was charged with being an accessory after the murder. In addressing this claim, the state district court noted that it was established at the post-conviction evidentiary hearing, via defense counsel's testimony, that petitioner was aware of his attorney's dual representation. "Mr. Boudreaux testified that he had discussed with Preston that he represented Clayton Duncan before the trial and that Preston had agreed that there was no conflict of interest." *Id*. at 8. However, as petitioner notes, "there was no formal court proceeding wherein a disclosure of the alleged conflict of interest could be fleshed out in open Court." *Id.*

The district court rejected petitioner's argument based upon the following. First, the court recognized that Duncan "was not charged as a principal and therefore, there was not any direct or actual conflict. Mr. Boudreaux was not prevented from asserting any defenses or eliciting any testimony relating to the events leading up to and at the time of the murder." *Id*.

Second, the court observed:

The trial transcript indicates that Clayton Duncan was examined and given the opportunity to explain the events which led up to the shooting as well as who was present. A review of his testimony did not indicate that Mr. Duncan was in any way hurtful to Mr. Preston's case and in fact, gave [a] significant amount of corroboration to Mr. Preston. (Tr., Day 5, pp. 11-46).

*Id.*

This court's review of the trial transcript confirms the district court's assessment of Clayton Duncan's testimony. Specifically, Duncan testified that the victim, without any provocation on petitioner's part, threw a brick at petitioner, hitting petitioner on the arm and drawing blood. (State rec., vol. 2 of 6, trial transcript at pp. 19-20). Thereafter, Duncan testified that he "heard one of the guys from the white side say go get a shotgun" and, it was at that point, with his arm bleeding, that petitioner asked someone to go get his gun from his vehicle. (State rec., vol. 2 of 6, trial transcript at p. 20).

As for petitioner's claim that Mr. Duncan's credibility was unduly compromised by virtue of counsel's invocation of Duncan's Fifth Amendment right, a review of the trial transcript does not support petitioner's claim. As the state district court noted, the invocation of the Fifth Amendment did not occur until the prosecution "attempted to expand the cross-examination to actions which Mr. Duncan undertook to assist Mr. Preston after the shooting." *Id.* Further, the discussion, in the presence of the jury, was limited. After the trial judge overruled defense counsel's objection to the prosecutor's line of questioning, Mr. Boudreaux advised: "I'm going to instruct him to invoke the 5th Amendment at this point, Your Honor." (State rec., vol. 2 of 6, trial transcript at p. 39). Thereafter, the prosecutor complained that he should be allowed to fully examine Mr. Duncan, just as defense counsel was allowed to do, but then, pursuant to defense counsel's request, all further discussion on

the matter took place outside of the jury's presence. When court resumed, the matter was settled and the prosecution did not resume his questioning of Duncan with regard to his actions following the shooting. (State rec., vol. 2 of 6, trial transcript at pp. 39-40).

This court finds, as the state district court concluded, that the prosecution's short-lived line of questioning, and defense counsel's brief invocation of Duncan's Fifth Amendment right not to answer the prosecutor's question, did not undermine the direct examination testimony of Duncan which supported petitioner's theory that he was provoked into shooting the victim. Petitioner has failed to satisfy his burden that he was prejudiced by counsel's alleged conflict of interest resulting from his dual representation of petitioner and Clayton Duncan.

Petitioner's next claim is that counsel was ineffective due to his failure to recognize, based upon the evidence provided to him by the State, that investigators performed a gun residue test on the victim. Petitioner asserts that had counsel "pick[ed] up on it", he could have taken "a variety of approaches in furtherance of the defense." (Federal rec., doc. 1, petitioner's supporting memorandum, pp. 24 and 25).

Based upon the following analysis, set forth by the state district court, this court finds petitioner's argument to be without merit.

During the course of the trial, Detective Bourg testified, under cross-examination by Mr. Boudreaux, that the gunshot residue test was performed on the victim's hand. Later, on redirect, Detective Bourg explained that the

gunshot residue test was not sent off for testing because there was no indication that the victim had a firearm. At the trial, Detective Bourg testified that if he thought there was some indication that the victim had a firearm, he would have sent it off to be tested. (Tr., Day 4, p. 200).

During the evidentiary hearing, the untested gunshot residue test was produced by the evidence custodian and shown to Preston's new counsel.[7] Detective Billy Bourg testified that he never had the sample tested because no witness had ever indicated that the victim had a weapon. In fact, even the [petitioner], in his statement had indicated that he did not see the victim with a weapon. At either of the evidentiary hearings, no witness was produced which alleged that the victim possessed or fired a weapon. Interestingly, Preston did not request the GSR [gunshot residue] to be submitted for testing during the evidentiary hearing and has not requested to do so in his application for post-conviction relief.

As explained by Detective Bourg in his evidentiary hearing testimony, during the initial phases of a murder investigation, evidence has to be collected. Not all evidence collected turns out to actually be evidence to be used. It is his policy in shooting cases to take a GSR sample from the shooter and the victim. In this case, through his investigation, the trial testimony, and the evidentiary hearing it is clear that no one had indicated that the victim had ever possessed a weapon or fired a weapon. Until there was some indication otherwise, there is no need to have the sample tested. It is not ineffective assistance of counsel for Mr. Boudreaux to fail to request its test anymore than it is ineffective assistance of present counsel for Mr. Preston.

*Id.* at p. 10 (footnote added).

In his last argument in support of his ineffectiveness claim, petitioner contends

that counsel's statement at the end of his closing argument was so deficient that it amounted

---

[7]Preston was represented by Kevin Boshea, Esq., in connection with his state post-conviction proceedings.

to ineffective assistance of counsel. Defense counsel, Larry Boudreaux, concluded his closing argument as follows:

> What happened is what we have to deal with and it is tragic. It really is tragic. It is sad. One family lost a child and it is in your hands what happens to another family's son. **I am not telling you, and I am not suggesting that you should find self-defense**. I am telling you that I think that if you find that this was second degree murder your [sic] wrong. You will have to bear that on your conscious. Thank you. (Tr., Day 5, p. 210).

*Id*. at pp. 10-11 (emphasis added).

Petitioner contends that counsel, by virtue of the above-statement, gutted his claim of self-defense. According to petitioner, his self-defense claim was strong in that it was supported by his testimony which was "reinforced by other evidence, including a piece of a gun found on the crime scene, the GSR (Gunshot Reside [sic] Testing) done on the victim, and the conduct of various individuals leading up to the shooting." (Federal rec., doc. 1, petitioner's supporting memorandum at p. 26).

As the state district court concluded in addressing the instant claim, "[e]ven if that one sentence where Boudreaux concedes that the jury may not buy the self-defense is deemed deficient, it can not be considered ineffective assistance of counsel under *Strickland*, because there is no reasonable probability that the outcome of the trial would have been different had Larry Boudreaux not uttered that sentence." *Id*. at p. 11. The court's assessment in this regard is correct.

A review of the trial transcript reflects that, in actuality, the only evidence petitioner had supporting his claim of self-defense was his own testimony. As explained above, the fact that a GSR sample was taken from the victim was not indicative of the fact that the victim shot or even possessed a weapon. The sample was taken as a matter of routine. No gunshot residue test was performed because the evidence was overwhelming that the victim did not possess a gun. That fact was not even disputed by petitioner at trial.

Additionally, the witnesses at the party at the time of the shooting described a scene of chaos. Counsel, by virtue of the above statement, was attempting to establish that what occurred was more akin to manslaughter than to murder, as there was insufficient time for the cooling of the blood. Unfortunately, the jury, as reflected by its verdict, rejected counsel's argument for manslaughter.

The jury's guilty verdict is not attributable to ineffectiveness on the part of counsel. Instead, it is attributable to the strong evidence presented against petitioner. As the district court provided:

> The evidence was overwhelming that Preston had ample opportunity to withdraw from the scene as the rest of his group did. However, not only did he not withdraw from the scene, he armed himself with the weapon, went back to the scene, fired the gun in the air, continued to approach the house and shot Picou in the back as Picou attempted to run away.

*Id.*

## DENIED FULL AND COMPLETE VOIR DIRE

It was stipulated at the July 27, 2006 evidentiary hearing that it is the district attorney's policy "to review its internal computer records and case log sheets to check the names of potential jurors to determine if the jurors had been charged or prosecuted by the Lafourche Parish District Attorney's Office and that no physical report of that review was generated." *Id*. at p. 4. "It was further stipulated that the information gleened from that review of the computer records was not something that would have been disclosed to defense counsel." *Id*. "It was also agreed that no formal 'rap sheets' were generated by law enforcement agencies, such as 'NCIC' reports, nor were they used [by the prosecution in questioning veniremembers during voir dire]." *Id*.

Petitioner argues that he was denied his right to a full and complete voir dire by not having access to the criminal histories of the veniremembers. Petitioner makes this argument despite the undisputed fact that no information gleened from the prosecution's review of the veniremembers' criminal histories was used during voir dire.

A petitioner, under the Due Process Clause of the Constitution, is entitled to a fair trial. *Aetna Life Ins. Co. V. Lavoie,* 475 U.S. 813, 829, 106 S.Ct. 1580, 1589, 89 L.Ed.2d 823 (1986), quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed.942 (1955) ("'A fair trial in a fair tribunal is a basic requirement of due process.'"). To achieve a fair trial, the prosecution cannot have an unfair advantage over the defense. *U.S.*

*v. LaVallee*, 439 F.3d 670, 681 (10th Cir. 2006) (quotation omitted) ("The right to due process and a fair trial include the essential element that there is no unfair advantage to the prosecution . . . .").

The district court, in addressing the issue at hand, concluded that the prosecution, by failing to provide defense counsel with veniremembers' criminal history reports, reports which the prosecution did not use in questioning veniremembers during voir dire, did not attain an unfair advantage over the defense. Prosecutors, in questioning prospective jurors, utilized no information to which petitioner did not have access. As such, there was no due process violation.

This court finds that the above determination does not represent an unreasonable application of applicable federal law to the facts of this case. Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[8]

New Orleans, Louisiana, this __18th__ day of _____August_____, 2010.


LOUIS MOORE, JR.
United States Magistrate Judge

---

[8]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.